IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ETHAN W. CROMPTON, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ANDREW SAUL, | : | |
| Commissioner of the Social Security | : | |
| Administration | : | NO. 20-5213 |

**MEMORANDUM**

CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE                                                                           May 31, 2022

  Ethan Wayne Crompton ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner of the Social Security Administration's ("the Commissioner") final decision, denying his claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. Plaintiff filed a brief supporting his request for review, and the Commissioner responded. For the reasons set forth below, this court will deny Plaintiff's Request for Review. Judgment will be entered in Defendant's favor and against Plaintiff.

## I. PROCEDURAL HISTORY[1]

  On October 19, 2018, Plaintiff applied for DIB, alleging disability, beginning July 30, 2018. R. at 15, 35. The Social Security Administration ("SSA") initially denied Plaintiff's claim on January 11, 2019, so Plaintiff requested a hearing. *Id.* at 15. On January 3, 2020, Plaintiff appeared before Administrative Law Judge ("the ALJ") Shawn Bozarth for an administrative hearing. *Id.* Plaintiff, represented by an attorney, and vocational expert Jeffrey W. Lucas ("the VE"), testified at the hearing. *Id.* at 32-56. On January 16, 2020, the ALJ, using the sequential

---

[1] This court has reviewed and considered the following documents in analyzing this case: Plaintiff's Brief and Statement of Issues in Support of Request for Review ("Pl.'s Br."), Defendant's Response to Request for Review of Plaintiff ("Def.'s Resp."), and the administrative record ("R.").

1

evaluation process for disability,[2] issued an unfavorable decision. *Id.* at 25. The Appeals Council denied Plaintiff's request for review on August 17, 2020, making the ALJ's findings the Commissioner's final determination. *Id.* at 1-6. Plaintiff sought judicial review from the court on October 20, 2020. Both parties consented to the undersigned's jurisdiction pursuant to 28 U.S.C. § 636(c)(1).

## II.   FACTUAL BACKGROUND

A.   Plaintiff's Personal History

Plaintiff, born on June 3, 1989, R. at 64, was 30 years old when the ALJ rendered his decision. He resides with his wife and two minor daughters. R. at 36, 38. Plaintiff has previous relevant work as a deli bar attendant, night cook, prep cook, salad bar attendant, groundskeeper, and counselor's assistant. *Id.* at 33-34. Plaintiff has a driver's license and can drive. *Id.* at 37. He testified he occasionally sees a handful of close friends. *Id.* at 47-48.

---

[2] The Social Security Regulations provide the following five-step sequential evaluation for determining whether or not an adult claimant is disabled:

> 1. If the claimant is working, doing substantial gainful activity, a finding of not disabled is directed. Otherwise proceed to Step 2. *See* 20 C.F.R. § 404.1520(b).
>
> 2. If the claimant is found not to have a severe impairment which significantly limits his physical or mental ability to do basic work activity, a finding of not disabled is directed. Otherwise proceed to Step 3. *See* 20 C.F.R. § 404.1520(c).
>
> 3. If the claimant's impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 of Subpart P of Part 404 of 20 C.F.R., a finding of disabled is directed. Otherwise proceed to Step 4. *See* 20 C.F.R. § 404.1520(d).
>
> 4. If the claimant retains the residual functional capacity to perform past relevant work, a finding of not disabled is directed. Otherwise proceed to Step 5. *See* 20 C.F.R. § 404.1520(f).
>
> 5. The Commissioner will determine whether, given the claimant's residual functional capacity, age, education, and past work experience, in conjunction with criteria listed in Appendix 2, he is or is not disabled. *See* 20 C.F.R. § 404.1520(g).

B. <u>Plaintiff's Testimony</u>

At the January 3, 2020 administrative hearing, Plaintiff testified regarding limitations he alleges result from physical impairments and prevent full-time employment. R. at 32-51. Plaintiff testified he underwent three surgeries to treat ulcerative colitis, a condition that began in 2014. *Id.* at 41. He no longer has colitis post removal of his large intestine; however, he still suffers from pouchitis, one side effect of the surgery that requires a J-pouch. *Id.* at 40, 42. Before having the J-pouch, Plaintiff testified he had an ileostomy bag for approximately four years. *Id.* at 42. Chronic pain, blood loss, and fatigue have been ongoing difficulties that Plaintiff indicated he has suffered from since 2013, with the fatigue notably worsening in recent years. *Id.* at 43-44. He attributes the fatigue to frequent bathroom visits that interrupt his nightly sleep. *Id.* at 39, 48. Chronic pain includes joint pain in his elbows, hips, and knees due to his diagnosed polyarthritis. *Id.* at 45, 47.

Plaintiff stated he was previously employed for three years. *Id.* at 41. For the duration of this employment, he required a bathroom break approximately twelve to twenty times a day. *Id.* Even after his third surgery during this time, frequent, yet necessary, bathroom breaks continually interfered with Plaintiff's ability to perform the requirements of his employment. *Id.* Plaintiff testified that nausea, fatigue, and chronic pain he experienced during this time, combined with his gastrointestinal issues, "made it nearly impossible for [him] to function in a day." *Id.* at 51. While he received accommodations from his last employer that allowed him to use the restroom facilities as needed, he nonetheless felt unsupported and pressured to resign by his bosses because of his health issues. *Id.*

Plaintiff testified he can shower, dress, eat, open doors, and use the bathroom without assistance. *Id.* at 47. He generally has "two really decent days, maybe three [days a week]" where

3

his finger joint pain is minimal and allows him to type on a computer. *Id.* at 48. Plaintiff performs household tasks, such as cleaning, vacuuming, and washing dishes. *Id.* at 49. Although he could drive short distances, Plaintiff testified he believed using public transportation would be problematic, because his gastrointestinal issues create a frequent and often-uncontrollable need for a restroom. *Id.* at 37.

Plaintiff stated his medications include daily Flagyl, after 2015, and an antidepressant. R. at 39-40, 44. He does not take any medication to manage his polyarthritis. *Id.* at 45-46.

C. Vocational Expert's Testimony

The VE classified Plaintiff's past position as a cook as a semi-skilled[3] position, performed at the light[4] level of exertion. *Id.* at 52. His past position as a residence counselor was skilled[5] and sedentary.[6] *Id.* Plaintiff's past position as a groundskeeper was listed as an unskilled[7] position

---

[3] "Semi-skilled work is work which needs some skills but does not require doing the more complex work duties. Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work. A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hand or feet may be moved quickly to do repetitive tasks." 20 C.F.R. § 404.1568(b).

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

[5] "Skilled work requires qualifications in which a person uses judgment to determine the machine and manual operations to be performed in order to obtain the proper form, quality, or quantity of material to be produced. Skilled work may require laying out work, estimating quality, determining the suitability and needed quantities of materials, making precise measurements, reading blueprints or other specifications, or making necessary computations or mechanical adjustments to control or regulate the work. Other skilled jobs may require dealing with people, facts, or figures or abstract ideas at a high level of complexity." 20 C.F.R. § 404.1568(c).

[6] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

[7] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. For example, we consider jobs unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30

requiring a medium[8] level of exertion. *Id.* at 52. The ALJ asked the VE to consider an individual of Plaintiff's age, education, and past work experience, limited to light work. *Id.* at 52-53. This individual can also:

> frequently handle, finger, feel and reach bilaterally. . . . could occasionally balance, crouch, crawl, stoop, bend or kneel, and occasionally climb stairs or ramps. . . . [but] could not climb ladders, ropes or scaffolds. The individual could not be exposed to unprotected heights, dangerous moving machinery . . . and machine parts. The individual should avoid concentrated exposure to respiratory irritants such as chemicals, dusts, odors, fumes, and gases, as well as extremes of temperature and humidity, and in poorly ventilated work areas. And the individual needs to be in proximity to a restroom.

*Id.* The VE responded that Plaintiff's prior position as a cook would remain available, while the positions of residence counselor and groundskeeper would be unavailable. R. at 53. Nevertheless, the VE indicated that there were other jobs in the national economy such an individual could perform, including: (1) marker, 146,000[9] positions nationally; and (2) cafeteria attendant, 60,000 positions nationally. *Id.* at 53-54.

If, in addition to the previous limitations outlined in the first hypothetical, an individual was: (1) off-task more than 10 percent of the workday; and, or (2) absent from work more than one day a month "from an inability to concentrate on tasks, persist in job duties, or remain on a necessary job pace from a combination of symptoms, limitations, treatment, and side effects of

---

days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs." 20 C.F.R. § 404.1568(a).

[8] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c).

[9] This number, per the VE, includes a 50 percent erosion "[d]ue to the factor of the DOT lists the handling as constant and having evaluated and placed many individuals in that job, most of them do not need constant [handling]." R. at 54.

treatment from severe impairments," the VE opined that, notwithstanding an accommodation, the individual would be precluded from any employment in the national economy. *Id.* at 54.

### III. THE ALJ's FINDINGS

In his decision, the ALJ issued the following findings:

1. [Plaintiff] meets the insured status requirement of the Social Security Act through December 31, 2023 (Exhibit 5D/1).

2. [Plaintiff] has not engaged in substantial gainful activity since July 30, 2018, the alleged onset date (Exhibit 2D, 3D) (20 CFR 404.1571 et *seq.*).

3. [Plaintiff] has the following severe impairments: ulcerative colitis, status-post IPAA with final takedown in August 2013 and polyarthritis (20 CFR 404.1520(c)).

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, [the undersigned] find[s] that [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), with the following additional limitations: [Plaintiff] can only occasionally balance, crouch, crawl, stoop, bend, or kneel and occasionally climb stairs or ramps. [Plaintiff] cannot climb ladders, ropes, or scaffolds. [Plaintiff] cannot be exposed to unprotected heights, dangerous or moving machinery, and machine parts. [Plaintiff] needs to avoid concentrated exposure to respiratory irritants such as chemicals, dusts, odors, fumes, and gases, extremes of temperature and humidity, as well as poorly ventilated work areas. [Plaintiff] needs ready access to a restroom. [Plaintiff] can frequently handle, finger, feel, and reach bilaterally.

6. [Plaintiff] is capable of performing past relevant work as a cook. This work does not require the performance of work-related activities precluded by [Plaintiff]'s residual functional capacity (20 CFR 404.1565).

> 7. [Plaintiff] has not been under a disability, as defined in the Social Security Act, from July 30, 2018, through the date of this decision (20 CFR 404.1520(f)).

## IV. DISCUSSION

A.  Standard of Review

Judicial review of the Commissioner's final decision is as follows. The Commissioner's findings of fact will not be disturbed if substantial evidence supports them. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). Substantial evidence is not "a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229)). While it is more than a mere scintilla of evidence, *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), it may amount to less than an evidentiary preponderance. *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).

Overall, this test is deferential to the ALJ. *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987). The court should affirm the ALJ's findings of fact that are supported by substantial evidence, even when the court, acting *de novo*, might have reached a different conclusion. *Id.* Indeed, the court may not undertake a *de novo* review of the Commissioner's decision by reweighing the record evidence itself. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *Monsour Med. Ctr.*, 806 F.2d at 1190-91. Nor is the court permitted to "impose [its] own factual determinations." *Chandler*, 667 F.3d at 359. *See Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002) ("We also have made clear that we are not permitted to weigh the evidence

or substitute our own conclusions for that of the fact-finder."). By contrast, the Commissioner's legal conclusions are subject to *de novo* review. *Poulos*, 474 F.3d at 91; *Schaudeck*, 181 F.3d at 431.

B.  Burden of Proof in Disability Proceedings

To be found "disabled" under the Act, Plaintiff must carry the initial burden of demonstrating that he is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). Plaintiff may establish a disability through: (1) medical evidence meeting one or more of the serious impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1; or (2) proof that the impairment is severe enough that Plaintiff cannot engage in any type of "substantial gainful work which exists in the national economy." *Heckler v. Campbell*, 461 U.S. 458, 460 (1983); 42 U.S.C. § 423(d)(2)(A).

Under the first method, Plaintiff is considered *per se* disabled by meeting one of the "listed" impairments. *Heckler*, 461 U.S. at 460. Under the second method, Plaintiff must initially demonstrate that a medically determinable impairment prevents returning to their past employment. *See Brown*, 845 F.2d at 1214. If Plaintiff proves that the impairment results in functional limitations to performing their past relevant work, then the burden of proof shifts to the Commissioner to prove that work exists in the national economy, which Plaintiff can perform given their age, education, work experience, and residual functional capacity. *See Poulos,* 474 F.3d at 92; *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

C.     Review of the Administrative Law Judge's Decision

Applying the sequential evaluation process, the ALJ ultimately determined that Plaintiff does not have an impairment or combination of impairments that meets or equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  R. at 19.  The ALJ concluded that, although Plaintiff could not perform all his past relevant work, he could perform his prior position as a cook, and other jobs in the national economy.  *Id.* at 51-58.

In his brief, Plaintiff argues that substantial evidence does not support the ALJ's decision because he assigned weight to the opinion of the state medical consultant, Dr. David Clark, M.D., while failing to credit the evidence provided by Plaintiff's treating gastroenterologist, Dr. Emmanuelle Williams, M.D.  Pl.'s Br. at 4-7.  Because he did so, the ALJ failed to capture all of Plaintiff's record-established limitations.  *Id.* at 6-7.  First, this court will discuss whether the ALJ erred in his failure to address and assign weight to the medical opinion of Plaintiff's treater, Dr. Williams.  Next, this court will examine whether the ALJ erred in assigning partial weight to consultant Dr. Clark.  Finally, this court will decide whether the ALJ, in his RFC, captured all of Plaintiff's limitations.

1. <u>The ALJ Did Not Err by Ignoring Evidence From Dr. Williams, Because That Evidence Was Neither Medical Opinion Evidence Nor Contrary Evidence That He Was Required to Consider</u>

Plaintiff argues the ALJ erred by not addressing the evidence provided by Dr. Williams. This court disagrees, because the evidence cited by Plaintiff was neither medical opinion evidence nor contrary evidence he was required to consider.

While Dr. Williams treated him for several years as his primary care provider, he documented Plaintiff's bowel issues.  Pl.'s Br. at 4.  Two letters and an office note assertedly weigh against the ALJ's decision and were ignored.  *Id.* at 4-5.  Because this evidence was neither medical

9

opinion evidence nor relevant "other evidence," it was not entitled to any particular consideration or weight.

### a. Dr. Williams Did Not Provide Medical Opinion Evidence

The ALJ ignored the opinion evidence from Dr. Williams. However, even if the ALJ had acknowledged the opinion evidence from Dr. Williams, he was under no obligation to credit it as medical opinion evidence because of either Dr. Williams' specialization as a gastroenterologist or his status as Plaintiff's treating physician. This is because medical opinion evidence is defined differently after recent rule changes.

Plaintiff applied for benefits after March 27, 2017; hence, the applicable regulations provide:

> [a] medical opinion is a statement from a medical source about what [Plaintiff] can still do despite [his] impairment(s) and whether [Plaintiff] [has] one or more impairment-related limitations or restrictions in the following abilities:
> (i) [Plaintiff's] ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
> (ii) [Plaintiff's] ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
> (iii) [Plaintiff's] ability to perform other demands of work, such as seeing, hearing, or using other senses; and
> (iv) [Plaintiff's] ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. § 404.1513(a)(2).

Dr. Williams wrote a note excusing Plaintiff from jury duty, on August 16, 2017, R. at 318, and letters dated September 5, 2017, R. at 319, and November 12, 2018, R. at 342-45. The August 2017 note stated that Plaintiff required "easy and frequent access to a bathroom" because of his gastrointestinal issues. *Id.* at 318. The September 2017 letter stated Plaintiff needed "frequent access to a bathroom," permission "to drink fluids throughout the workday to stay hydrated," and

10

that Plaintiff "may experience flares of his disease." *Id.* at 319-20. The November 2018 letter summarized Plaintiff's past medical history and gastrointestinal symptoms. *Id.* at 342-44.

Here, Dr. Williams' two letters and one office note do not qualify as a medical opinion that the ALJ was required to evaluate. Indeed, Dr. Williams never opined on Plaintiff's functional limitations related to the statutorily defined abilities in 20 C.F.R. § 404.1513(a)(2). Nor did Dr. Williams opine on what activities Plaintiff could or could not perform in a work setting. *Id.* at 318-20, 396-98. Accordingly, Dr. Williams' letters and office note do not contain an "opinion" as defined in the regulations.

b.  Dr. Williams Did Not Provide Contrary or Probative Other Evidence

The evidence Plaintiff presents from Dr. Williams qualifies as "other evidence." Nonetheless, because his opinion was not contrary or probative evidence, the ALJ was under no obligation to address it specifically. Additionally, this evidence was "overwhelmed" by other evidence in the record cited by the ALJ.

Determining a claimant's RFC is an administrative task to be performed by the ALJ. *See Chandler*, 667 F.3d at 361. As the *Chandler* court explained:

> The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations. *See* 20 C.F.R. §§ 404.1527(e)(1), 404.1546(c). Although treating and examining physician opinions often deserve more weight than the opinions of doctors who review records, *see, e.g.*, 20 C.F.R. § 404.1527(d)(1)-(2),[10] "[t]he law is clear ... that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity."

*Id.* (quoting *Brown v. Astrue*, 649 F.3d 193, 197 n.2 (3d Cir. 2011)).

---

[10] Although *Chandler* applies the old regulations, the principle that the ALJ, not doctors, must determine a claimant's RFC, still holds. A treating source's opinion about a Plaintiff's RFC is neither useful nor probative, and the ALJ may ignore it. *See* 20 C.F.R. § 404.1520b(c).

11

Plaintiff has failed to demonstrate how Dr. Williams' statements contradicted the ALJ's RFC finding that Plaintiff could perform a restricted range of light work. Pl.'s Br. at 4-5, 7. Instead, Dr. Williams opined Plaintiff could still perform his essential job duties as a groundskeeper, an occupation classified as requiring medium exertion. R. at 52, 165, 320. Even so, the language in 20 C.F.R. § 404.1520c states that the ALJ is not required to adopt the limitations of any one medical source.[11] In fact, the ALJ adopted in his RFC Dr. Williams' statement that Plaintiff needed easy and frequent restroom access. R. at 19-21, 318, 320, 396, 398. Accordingly, the court is unpersuaded that remand is required based on this argument.

2. The ALJ Did Not Err by Crediting the Opinion of State Medical Consultant, Dr. Clark

Plaintiff appears to argue the ALJ improperly accepted Dr. Clark's opinion because, unlike Dr. Williams, Dr. Clark does not specialize in gastroenterology and only examined Plaintiff briefly once. Pl.'s Br. at 6. This court disagrees with Plaintiff's contention that the ALJ should have excluded the opinion from consideration and acceptance.

Dr. Clark opined that Plaintiff could perform light work, except that Plaintiff could only occasionally perform the following activities: climb ramps, stairs, ladders, ropes, or scaffolds; balance; and stoop, kneel, crouch, crawl. R. at 69-73. He opined that Plaintiff should avoid concentrated exposure to extreme heat, humidity, vibration, respiratory irritants, and hazards. *Id.*

---

[11] Under applicable regulations, when considering a medical opinion, the ALJ is not required to give any "specific evidentiary weight, including controlling weight" to any one opinion. 20 C.F.R. § 404.1520c(a). Instead, the ALJ must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability, consistency, relationship with the claimant, specialization, and "other factors." *Id.* § 404.1520c(a)-(c). The ALJ must "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." *Id.* § 404.1520c(a). "The more relevant the medical evidence and supporting explanations provided by a medical source are to support his or her medical opinion . . . , the more persuasive the medical opinion . . . ." 20 C.F.R. § 404.1520c(c)(1). In addition, "[t]he more consistent a medical opinion . . . is with the evidence from other medical sources and nonmedical sources . . . , the more persuasive the medical opinion . . . will be." *Id.*

To the extent Plaintiff challenges the ALJ's finding that Dr. Clark's opinion was partially persuasive, although he is not a gastroenterologist, *see* Pl.'s Br. at 6-7, there is no requirement that a reviewing state agency medical consultant or a consultative examiner specialize in the specific condition for which the claimant seeks disability. Rather, specialization is one of several factors the ALJ may, but is not required to, discuss when evaluating the persuasiveness of a medical opinion. *See* 20 C.F.R. § 404.1520c(b)(2) (The ALJ "may, but [is] not required to, explain how [he or she] considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate . . . ."); *id.* § 404.1520c(c)(4) ("The medical opinion or prior administrative medical finding of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty . . . .").

Here, the ALJ adequately explained his decision to assign partial weight to Dr. Clark's conclusion that Plaintiff was capable of light work.[12] R. at 22. Therefore, the court rejects Plaintiff's contention that the ALJ erred in considering and assigning partial persuasive value to Dr. Clark's opinion.

3. <u>The ALJ's RFC Adequately Captured All of Plaintiff's Record-Established Limitations</u>

Plaintiff claims the ALJ's RFC finding failed to account for all his physical limitations. Pl.'s Br. at 3-8. This court disagrees that the ALJ failed to adequately capture all of Plaintiff's record-established limitations, because he, in fact, considered evidence from Drs. Yoder, Buckwalter, and McGarrity, DNP Durkin, and evidence from Physician Assistant Seifert. The ALJ's review of the totality of this evidence adequately captured Plaintiff's record-established limitations.

---

[12] The ALJ noted that Dr. Clark's opinion was based on his program knowledge and provided a detailed rationale for his finding. R. at 22. He notes that the opinion considered Plaintiff's reported pain level, abnormal laboratory results, history of surgical intervention, and generally normal physical findings. *Id.* The ALJ reasoned that because the opinion was consistent with the record evidence, it was partially persuasive. *Id.*

13

An RFC "'is defined as that which an individual is still able to do despite the limitations caused by his or her impairments(s).'" *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359, n.1 (3d Cir. 1999)). Substantial evidence supports it if it includes a discussion of the individual's abilities for "8 hours a day, for 5 days a week, or an equivalent work schedule." *Bencivengo v. Comm'r of Soc. Sec.*, No. 00-1995, 2000 U.S. App. LEXIS 38785, at *6 (3d Cir. Dec. 19, 2000) (non-precedential); *see also Santiago-Rivera v. Barnhart*, 2006 U.S. Dist. LEXIS 69559, at *36 (E.D. Pa. Sept. 26, 2006); *Brown v. Kijakazi*, 2021 U.S. Dist. LEXIS 221644, at *16 (E.D. Pa. Nov. 17, 2021); *Sheehan v. Astrue*, No. 10-5598, 2013 U.S. Dist. LEXIS 38201, at *22 (E.D. Pa. Feb. 28, 2013).

An ALJ "may properly accept some parts of the medical evidence and reject other parts, but [he] must consider all the evidence and give some reason for discounting the evidence [he] rejects." *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994). *See also Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981) ("Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, . . . an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." (citation omitted)). As stated above, the ALJ must review the relevant evidence, and if there is substantial evidence to support his factual determinations, this court should accept those factual findings. *See Poulos*, 474 F.3d at 91. Substantial evidence is less than a preponderance. *See Biestek*, 139 S. Ct. at 1154; *Fargnoli*, 247 F.3d at 38. However, evidence is insubstantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Hum. Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983).

14

The ALJ considered evidence from Dr. J.B. Yoder, M.D., of Plaintiff's reported history of ulcerative colitis, and Dr. Yoder's notation that Plaintiff was on "chronic metronidazole [Flagyl] for ileal pouchitis." R. at 237. During an August 2, 2018 examination, Dr. Yoder found Plaintiff possessed a full range of motion, no focal neurological changes, normal abdomen bowel sounds, and was not in acute distress. *Id.* at 239.

The ALJ also considered evidence from a September 17, 2018 examination by Dr. Nicholas A. Buckwalter, M.D., who found Plaintiff's musculoskeletal exam unremarkable; Plaintiff had no appreciable joint swelling, erythema, warmth, or tenderness, and both his left arm and ankle appeared normal. *Id.* at 248.

A third, consistent examination that same month by Susan Durkin, DNP, noted that Plaintiff reported no significant or ongoing ulcerative colitis flares. *Id.* at 261. On November 1, 2018, DNP Durkin further noted that Plaintiff exhibited tenderness to palpation of the left shoulder, full range of motion, normal tone and muscle strength, intact sensation, and normal gait and station. *Id.* at 262.

The ALJ considered evidence from Physician Assistant Michael R. Seifert, who, on October 17, 2018, assessed Plaintiff's ulcerative colitis as both uncomplicated and well-controlled, and noted his recent prednisone prescription for polyarticular arthritis. *Id.* at 251. PA Seifert noted the stability of Plaintiff's ulcerative colitis, with most of his colon removed, and Plaintiff experienced only intermittent bleeding episodes. *Id.* at 249. In January 2019, PA Seifert saw Plaintiff for gastrointestinal issues, including intermittent bleeding and abdominal pain episodes. *Id.* at 598. Rheumatology also evaluated Plaintiff for joint pain and fatigue, determined to be seronegative. *Id.* He was encouraged to continue to follow through with specialty care. *Id.* at 599. On an August 29, 2019 visit, PA Seifert deemed Plaintiff's ulcerative colitis stable, and that he was doing well without an opiate pain control medication. *Id.* at 589-90. As of an October 17,

2019 visit with PA Seifert, the ulcerative colitis remained stable, without opiate medication for pain control; his inflammatory markers were normal. *Id.* at 583. PA Seifert recommended Plaintiff begin more regular and scripted exercising. *Id.*

Finally, the ALJ considered evidence from December 2018, when Dr. Thomas J. McGarrity, M.D., noted Plaintiff's "mild crypt distortion" of the colon and "mild inflammation of the lamina propria" in his small intestine. *Id.* at 360.

This court notes that a diagnosis alone does not demonstrate disability. *See Foley v. Comm'r of Soc. Sec.*, 349 F. App'x 805, 808 (3d Cir. 2009) (non-precedential). Plaintiff fails to identify evidence in the record that these diagnosed impairments required limitations greater than those the ALJ included in his RFC. *See, e.g.*, *Phillips v. Barnhart*, 91 F. App'x 775, 780 (3d Cir. 2004) (non-precedential) ("[Plaintiff's] argument incorrectly focuses on the diagnosis of an impairment rather than the functional limitations that result from that impairment. A diagnosis of impairment, by itself, does not establish entitlements to benefits under the Act."). In determining a claimant's RFC, the ALJ must only include credibly-established limitations and not every limitation alleged. *Rutherford*, 399 F.3d at 554. It is the plaintiff's burden to "prove [his or] her medical condition and [the resulting] functional limitations." *Esposito v. Apfel*, No. 99-771, 2000 U.S. Dist. LEXIS 1720, 2000 WL 218119, at *4 (E.D. Pa. Feb. 24, 2000) (citing *Diaz v. Shalala*, 59 F.3d 307, 315 (2d Cir. 1995); *Torres v. Schweiker*, 682 F.2d 109, 111 (3d Cir. 1982)); *see also Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (claimant bears the burden of proof at steps one through four of the sequential analysis). Based on the medical evidence cited by the ALJ, his RFC captured all of Plaintiff's record-established limitations.

## V. CONCLUSION

A thorough review of the relevant law and the record indicates that substantial evidence supports the ALJ's decision, and that failure to consider Dr. Williams' evidence was not error. Additionally, the ALJ's RFC captured all of Plaintiff's record-established limitations. Accordingly, Plaintiff's Request for Review is denied. An implementing Order and Order of Judgment follow.